No. 56,959

STATE OF KANSAS, *Appellee*, v. WILLIAM WISE, *Appellant*.

(697 P.2d 1295)

Opinion filed April 5, 1985.

*Charles A. O'Hara,* of O'Hara & Tousley, of Wichita, argued the cause and was on the brief for appellant.

*Geary N. Gorup,* assistant district attorney, argued the cause, and *Clark V. Owens,* district attorney, and *Robert T. Stephan,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: William Wise was prosecuted in Sedgwick County upon an information charging him in count I with premeditated first-degree murder, K.S.A. 21-3401, and in count II with felony murder, K.S.A. 21-3401. He was convicted by a jury of felony murder, and brings this appeal. The issues raised are: (1) Whether there was sufficient evidence to support the verdict, and in particular whether there was sufficient evidence to support a finding that the homicide occurred during the commission of a felony; (2) whether the jury could convict the defendant of felony murder and at the same time acquit him of first-degree premeditated murder, arising out of the same facts; (3) whether defendant could be convicted of felony murder when he was not charged with or convicted of the underlying felony; (4) whether the trial court committed prejudicial error by not instructing on murder in the second degree and voluntary manslaughter, and in not submitting the first-degree murder charges in the alternative;

and (5) whether the trial court erred in excluding reference to or the results of a polygraph examination.

We turn first to the trial evidence, in order to determine the first issue raised. The body of the victim, Richard Ricks, was found on the floor of a motel room in Wichita on April 21, 1981. Ricks died of a gunshot wound to the head. A .32-caliber hand-gun was found near the body, but was determined not to be the murder weapon. The victim's wallet was found on a dresser; there was no money in it. A crumpled five-dollar bill was found between the victim's arm and his torso. No other money was found. No narcotics or other drugs were found.

Christina Lynn was interviewed shortly after the homicide. She was then living with the defendant, William Wise. She told the investigator that she and the defendant had been at the Gasser Club, located near the crime scene, on the night before the body was discovered. Defendant left for a short time, and Richard Ricks made a pass at her and fondled her breasts. She said that she later told Wise what had happened, and he threat-ened to blow Ricks' brains out if he ever "messed" with her again. Christina Lynn gave similar testimony, under oath, at an inquisition. At that time, she did not implicate the defendant in the murder.

Some time after giving this testimony, Christina Lynn moved to Memphis, Tennessee, where the defendant was imprisoned on felony charges unrelated to this homicide. On October 19, 1983, Christina called one of the Wichita detectives and told him that she was ready to give a statement that would solve the Ricks homicide and that the defendant was the one who killed Ricks. On the following day, Christina was interviewed by members of the Memphis Police Department. She gave a typed and signed statement in which she said that she, the defendant, and two other men, Donald Helt and Craig Jefferson, went to Richard Ricks' motel room to rob him of money and narcotics. Christina stood outside while the three men entered. She heard a shot. They came back outside and William Wise told her that he had killed Richard Ricks. On October 22, 1983, an agent of the F.B.I. interviewed Christina Lynn in connection with an investigation of narcotics trafficking at the Federal Correctional Institution in Memphis. Christina told the agent that in April 1981 Richard Ricks was shot and killed at Wichita and, prior to the shooting,

William Wise had advised her that he was going to kill Ricks. The animosity between Wise and Ricks stemmed from a prior narcotics transaction and the fact that Wise had caught Ricks "messing around" with Christina. She told the agent that she, Donald Helt, Craig Jefferson and Wise went to a motel in Wichita where Ricks was located. Wise, Helt and Jefferson went into the room; Christina remained outside. She heard several gunshots, and when Wise emerged from the room he told her that he had shot Ricks.

At the time Christina made the telephone call to the Wichita detective and the statements to the Memphis police officers and the F.B.I. agent, she believed that Wise had a "contract" out for her and that her life was in imminent danger. A few days after the statements were made, she found out that the threat was not real. She then told the Memphis officers that her story had been a lie. She executed an affidavit, stating that she knew nothing about the involvement of Wise in any homicide. At trial she testified that Ricks had made a pass at her, but she claimed that the defendant's response was merely that Ricks should keep his hands off her. She stated that she spent the night (when Ricks was killed) with Wise; that there was no confrontation between Wise and Ricks; and that she first heard about Ricks' death the next morning. A Memphis detective and the F.B.I. agent testified to her earlier statements, and Christina admitted that she made those statements.

The State called three other witnesses who testified that the defendant had told them that he killed Richard Ricks. The defendant testified that he spent the night with Christina and that he had nothing to do with the Ricks homicide. Defendant also called Donald Helt as a witness; Helt testified that he knew nothing about the Ricks homicide until his wife told him about it the next day.

When the defendant in a criminal case contends on appeal that the trial evidence is insufficient to sustain the conviction, the standard of review on appeal is: Does the evidence, when viewed in the light most favorable to the prosecution, convince the appellate court that any rational factfinder could have found the defendant guilty beyond a reasonable doubt? *State v. Voiles*, 226 Kan. 469, Syl. ¶ 6, 601 P.2d 1121 (1979), and *State v. Fosnight*, 235 Kan. 52, Syl. ¶ 2, 679 P.2d 174 (1984). The evidence is

not to be weighed by the appellate court, but must be viewed in the light most favorable to the prevailing party below. If the essential elements of the charge are sustained by any competent evidence, the conviction stands. *State v. Pham,* 234 Kan. 649, 668, 675 P.2d 848 (1984).

The statements which Christina Lynn made to the Memphis officers and the F.B.I. agent were hearsay, but since she was present and testified in person during this trial, they were admissible as an exception to the hearsay rule under K.S.A. 60-460(a). As such, those statements were admissible as substantive evidence, and could form part of the basis for the conviction. See *State v. Fisher,* 222 Kan. 76, 79, 563 P.2d 1012 (1977), and *State v. Garnes,* 229 Kan. 368, 624 P.2d 448 (1981). The evidence was thus sufficient to support a finding that the defendant went to and entered Ricks' room with the intent to rob him of money and narcotics; that in the process of robbing or attempting to rob the victim, the defendant fatally shot him; and that this offense occurred in Sedgwick County, where the motel was located. We find no merit to defendant's challenge to the sufficiency of the evidence.

The next point argued is whether the jury could convict the defendant of felony murder and simultaneously acquit him of premeditated murder arising out of the same facts. The information charged defendant with premeditated murder in count I, and with felony murder in count II. The verdict form submitted to the jury followed the sequence of the information, and a verdict of guilty or not guilty of first-degree murder as charged in count I was followed by a verdict of guilty or not guilty of first-degree murder as charged in count II. The jury found defendant not guilty of murder as charged in count I but guilty of murder as charged in count II. Defendant argues that the first-degree murder statute, K.S.A. 21-3401, establishes only one offense, murder in the first degree, and that a defendant cannot be charged with both premeditated murder and felony murder. Our cases are to the contrary. In *State v. Jackson,* 223 Kan. 554, 575 P.2d 536 (1978), Jackson was convicted of both premeditated murder and felony murder, arising out of the killing of a single victim. On appeal, he contended that he could not be convicted of both premeditated and felony murder. Chief Justice Schroeder, speaking for a unanimous court, said:

"The appellant asserts it was error to be charged and convicted of both premeditated murder and felony murder for the same homicide.

"In *State v. Lamb*, 209 Kan. 453, 497 P.2d 275, our court held:

'. . . [W]here an information charges a defendant with murder in the first degree on both theories—the premeditated killing and killing while in the perpetration of a felony—a defendant is not prejudiced because the state has apprised him that it is proceeding on both theories of first degree murder, and that it intends to produce evidence on both theories.' (Syl. ¶ 9.)

Thus, the state is *not* required to elect between the murder theories charged as long as the defendant is fully apprised of the charges against him. (See also *State v. Wilson*, 220 Kan. 341, 344, 552 P.2d 931 [citations omitted].)

"In the case at bar, however, the appellant was *convicted* of both premeditated murder and felony-murder. He asserts the trial court erred in instructing the jury on both premeditated and felony murder and in allowing the double conviction to stand.

"The instructions given by the trial court on first degree and felony murder were taken from PIK, Criminal, §§ 56.01, 56.02 [Revised]. The court also instructed the jury that the appellant would be sentenced for one crime only, stating:

'If, however, you find the killing was committed maliciously and willfully, with deliberation and premeditation, then you may find either or both Defendants guilty of first degree murder under both the felony murder theory in Count III and the theory of malicious and willful and deliberate premeditated killing in Count II, depending on your application of Instruction 7. In the event you find one or both Defendants guilty under both theories, they would only be punished for one first degree murder.'

If the appellant had been sentenced twice as a result of one homicide, clearly such conduct would constitute double punishment which could not be allowed to stand. (See *People v. Goodchild*, 68 Mich. App. 226, 242 N.W.2d 465 [1976]; and *State v. Gilroy*, 199 N.W.2d 63 [Iowa 1972]. Here the instruction on both premeditated murder and felony murder was correct. But the instruction regarding conviction on both theories and the conviction under both theories was technically incorrect. On the facts in this case we find it did not constitute prejudicial error. While no reversible error exists in this case, we hold it to be better practice for the trial court to instruct the jury in the alternative on first degree murder so that no possibility of jury confusion results." 223 Kan. at 556-57.

While the statute, K.S.A. 21-3401, establishes but one offense, murder in the first degree, it provides alternative methods of proving the deliberation and premeditation required for a conviction of first-degree murder. See *State v. McCowan*, 226 Kan. 752, 759, 602 P.2d 1363 (1979), *cert. denied* 449 U.S. 844 (1980). Here, the State notified the defendant that it was proceeding under both theories, and it offered evidence in support of each. The jury had evidence before it from which it could find that a

robbery was planned but a killing was not, and that the homicide took place during the commission or attempted commission of the robbery. That a jury, in a single case, finds that a homicide is committed not with premeditation but in the commission of a felony is not inconsistent. At any rate, consistency in a verdict is not necessary; a verdict, though inconsistent, is not erroneous so long as there is sufficient competent evidence to support it. See *State v. Freeman*, 198 Kan. 301, 304, 424 P.2d 261 (1967), citing *Dunn v. United States*, 284 U.S. 390, 76 L.Ed. 356, 52 S.Ct. 189 (1932), 80 A.L.R. 161; *State v. Antwine*, 4 Kan. App. 2d 389, 396, 607 P.2d 519 (1980); and *State v. Shultz*, 225 Kan. 135, 141-42, 587 P.2d 901 (1978).

Defendant argues that once he was acquitted of first-degree murder on count I, such acquittal bars his being found guilty of first-degree murder on count II. We would agree that such a verdict on premeditated first-degree murder in one case would bar a later charge of first-degree felony murder in a separate case. However, the State may at the same time charge a defendant with first-degree murder and proceed upon both theories, and the acquittal on one theory does not bar conviction on the other, in the same case and at the same time.

Defendant next contends that one cannot be convicted of felony murder unless he or she is charged with and convicted of the underlying felony. The statute does not require a charge and conviction of the underlying felony, and cases from other jurisdictions having similar statutes indicate that the contrary is the general rule. K.S.A. 21-3401, defining felony murder, reads:

"Murder in the first degree is the killing of a human being committed . . . in the perpetration or attempt to perpetrate any felony."

We find no Kansas cases directly in point, and counsel have not suggested any. The issue was before the Pennsylvania Supreme Court in *Com. v. Giles*, 500 Pa. 413, 418, 456 A.2d 1356 (1983). That court said:

"Where a murder is alleged to have been committed in the perpetration of a felony, there is no requirement that the defendant actually be charged with the underlying felony. See *Commonwealth v. Bastone*, 466 Pa. 548, 553-54, 353 A.2d 827, 830 (1976), and cases cited therein."

See also *Head v. State*, 443 N.E.2d 44 (Ind. 1982), and *People v. Murray*, 92 App. Div. 2d 617, 459 N.Y.S.2d 810 (1983). In the

latter case, the court held that the completion of the underlying felony is not an essential element of felony murder, and that an acquittal of the underlying felony is not inconsistent with a conviction of felony murder.

We hold that under our statute, K.S.A. 21-3401, an accused need not be prosecuted or convicted of the underlying felony in order to be convicted of felony murder.

Next, defendant contends that the trial court erred in failing to instruct on the lesser included offenses of second-degree murder and voluntary manslaughter. This contention cannot be sustained for two reasons. First, defendant neither requested the giving of additional instructions covering these lesser included offenses nor did he object to the instructions given. The instructions given were not clearly erroneous. Thus, consideration of this issue is barred by K.S.A. 22-3414(3). And second, there was no evidence to support either suggested instruction. The evidence was that the homicide was committed during a robbery. The defense was alibi. Since there was no evidence to support lesser degree instructions, the trial court did not err in failing to give them. *State v. Holt,* 228 Kan. 16, 24, 612 P.2d 570 (1980).

Next, defendant contends that the trial court erred in failing to submit the premeditated murder and felony murder charges in the alternative. Both parties, in their briefs, rely upon *State v. Jackson,* 223 Kan. 554, from which we quoted at length earlier in this opinion. *Jackson* holds that it is the better practice to instruct alternatively on premeditated and felony murder, when the State is relying on both theories and charges the defendant under both theories. Here, the jury was instructed separately on the theories, and convicted defendant only of felony murder. There was no objection to the instructions as given, no objection to the verdict form utilized, and no request for the submission of the charges in the alternative. There is no indication that the jury was confused by the instructions; the return of one guilty and one not guilty verdict would indicate the contrary. Further, the trial court imposed only a single sentence, which is correct under *Jackson.* We find no prejudicial error.

Finally, defendant contends that the trial court erred in refusing to permit defense counsel to introduce evidence of the results of a polygraph test administered to Christina Lynn in Tennessee, or to refer to that test before the jury. The Kansas rule

has been frequently stated and is clear: In the absence of a stipulation between the parties, the results of a polygraph examination are not admissible in evidence. *State v. Crossman,* 229 Kan. 384, 389, 624 P.2d 461 (1981); *State v. Nemechek,* 223 Kan. 766, Syl. ¶ 3, 576 P.2d 682 (1978); and *State v. Blosser,* 221 Kan. 59, Syl. ¶ 1, 558 P.2d 105 (1976). Here there was no stipulation. To permit the defendant to introduce the results of the test, or even to refer to the giving of the test, would have been improper.

The judgment is affirmed.