NOT DESIGNATED FOR PUBLICATION

No. 123,547

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

EDWARD A. WARREN JR.,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; SETH L. RUNDLE, judge. Opinion filed March 18, 2022. Affirmed.

*Joshua S. Andrews*, of Cami R. Baker & Associates, P.A., of Augusta, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., HILL and GARDNER, JJ.

PER CURIAM: Edward A. Warren Jr. has appealed the Sedgwick County District Court's summary denial of his habeas corpus motion challenging jury verdicts convicting him of 21 counts of violating a protective order for repeatedly placing telephone calls from jail to a woman he had twice been charged with beating. On appeal, Warren contends he is entitled to relief because the lawyer handling his direct appeal failed to argue his speedy trial rights had been violated and inadequately argued he had a statutory privilege to call the woman. We disagree and affirm the district court's denial of his motion for relief under K.S.A. 60-1507.

1

The factual background to Warren's convictions in this case takes some twists and turns. Warren was charged in another case with domestic battery for hitting A.H. The district court entered a protective order in that case directing that Warren have no contact with A.H. Warren was later charged in a second case for another domestic battery of A.H. He was then held in the Sedgwick County Jail as a pretrial detainee in those cases. The district court appointed a lawyer to represent Warren in both cases. Warren filed motions in those cases to represent himself. For reasons not readily apparent in our record, there was a significant delay between when Warren filed the motions for self-representation and when the district court granted them.

In between the filing and granting of his self-representation motions, Warren called A.H. from the jail at least 22 times from July 17 to August 13, 2018. Based on those telephone calls, the State charged Warren with 22 counts of violating a protective order, a class A misdemeanor under K.S.A. 2018 Supp. 21-5924(a)(4). The district court granted Warren's request to represent himself on those charges. The State dismissed one count before trial. The jury convicted Warren of the remaining 21 counts. The district court later imposed a sentence of 105 days in jail on each count to be served consecutively.

Warren appealed those convictions. A court-appointed lawyer handled the appeal for Warren. We affirmed the convictions and sentences. *State v. Warren*, No. 121,209, 2020 WL 4035062, at *5 (Kan. App. 2020) (unpublished opinion). Warren then drafted and filed a habeas corpus motion alleging the lawyer handling the direct appeal was constitutionally inadequate. After reviewing the motion and the record in the criminal case, the district court summarily denied the motion. Warren has appealed that ruling and is now represented by another court-appointed lawyer in this appeal.

When the district court summarily denies a 60-1507 motion, we exercise unlimited review. We can examine the motion and the case file just as well as the district court, and

2

the district court's determination requires no weighing of conflicting testimony or other evidence to which we would owe deference. *Bellamy v. State*, 285 Kan. 346, 354, 172 P.3d 10 (2007). Well established principles govern 60-1507 motions alleging a criminal defendant has received constitutionally inadequate representation from a lawyer either leading up to and during trial or on direct appeal.

Here, Warren cannot complain about the quality of his legal representation during trial precisely because he represented himself. See *Faretta v. California*, 422 U.S. 806, 834 n.46, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) ("[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'"); see also *State v. Torrence*, No. 120,077, 2020 WL 6930802, at *3 (Kan. App. 2020) (unpublished opinion) (recognizing applicability of *Faretta* rule to 60-1507 motions brought by defendants representing themselves at trial). But he can challenge the work of the lawyer representing him in his direct appeal. See *Miller v. State*, 298 Kan. 921, 929-30, 318 P.3d 155 (2014).

To prevail on a 60-1507 motion, a convicted defendant must show both that his or her legal representation "fell below an objective standard of reasonableness" guaranteed by the right to counsel in the Sixth Amendment to the United States Constitution and that absent the substandard lawyering there is "a reasonable probability" the outcome in the criminal case would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Phillips*, 312 Kan. 643, 676, 479 P.3d 176 (2021); *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014); see *Chamberlain v. State*, 236 Kan. 650, Syl. ¶¶ 3, 4, 694 P.2d 468 (1985) (adopting and stating *Strickland* test for ineffective assistance). Reasonable representation demands that degree of "skill and knowledge as will render the trial a reliable adversarial testing process." *Strickland*, 466 U.S. at 688. A reasonable probability of a different outcome "undermine[s] confidence" in the result and marks the criminal proceeding as fundamentally unfair. *Strickland*, 466 U.S. at 694. The movant, then, must prove both

3

constitutionally inadequate representation and sufficient prejudice attributable to that representation to materially question the resulting convictions.

As the United States Supreme Court and the Kansas Supreme Court have stressed, review of the representation should be deferential and hindsight criticism tempered lest the evaluation of a lawyer's performance be unduly colored by lack of success notwithstanding demonstrable competence. See *Strickland*, 466 U.S. at 689-90; *Holmes v. State*, 292 Kan. 271, 275, 252 P.3d 573 (2011). Rarely should a lawyer's representation be considered substandard when he or she investigates the client's circumstances and then makes a deliberate strategic choice among arguably suitable options. *Strickland*, 466 U.S. at 690-91. Whether a lawyer had made reasoned strategic decisions bears on the competence component of the *Strickland* test.

Regardless of the inadequacy of legal representation, a 60-1507 motion fails if the movant cannot establish substantial prejudice. And a reviewing court properly may deny a motion that falters on the prejudice component of the *Strickland* test without assessing the constitutional adequacy of the representation. *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); see *Edgar v. State*, 294 Kan. 828, 843-44, 283 P.3d 152 (2012); *McConnell v. State*, No. 123,246, 2021 WL 4496479, at *4 (Kan. App. 2020) (unpublished opinion), *petition for rev. filed* October 12, 2021. In other words, even assuming a criminal defendant's legal representation fell below the Sixth Amendment standard, he or she is not entitled to habeas corpus relief if the result would have been no different with competent counsel.

On appeal, Warren contends the lawyer representing him in his direct criminal appeal was constitutionally deficient in the two ways, as we have indicated. Because the district court did not hold an evidentiary hearing on Warren's 60-1507 motion, we have no way of knowing what strategic determinations the lawyer may have made in sorting

4

through potential issues to raise on direct appeal. We may, nonetheless, consider whether the asserted deficiencies resulted in legal prejudice to Warren.

First, Warren contends his appellate lawyer should have argued the State violated his statutory right to a speedy trial, protected in K.S.A. 2020 Supp. 22-3402. A violation of K.S.A. 2020 Supp. 22-3402 requires the dismissal of the charges and any resulting convictions with prejudice. See *State v. Queen*, 313 Kan. 12, 29-30, 482 P.3d 117 (2021). Warren asserted and lost a speedy trial challenge in the district court before trial, so the issue was preserved for appellate review. The lawyer handling the appeal did not brief a speedy trial claim.

But the statutory speedy trial argument has no merit. Warren had been charged in and detained on more than one criminal case. When a defendant is held in multiple cases, the speedy trial right in K.S.A. 2020 Supp. 22-3402 does not apply. See *State v. Mathenia*, 262 Kan. 890, 900, 942 P.2d 624 (1997) ("[W]e interpret K.S.A. 22-3402 as not applicable when a defendant is held in jail for any reason other than the subject criminal charge."); *State v. Goss*, 245 Kan. 189, 191, 777 P.2d 781 (1989) ("[D]efendant, who was in jail on the charges herein, was served with a second criminal warrant involving unrelated burglary and theft charges . . . . Thus, defendant was held in jail solely on the case before us approximately one week between his arraignment and trial. Accordingly, he does not meet the requirement of K.S.A. 22-3402[1] of being 'held in jail solely by reason thereof.'"); *State v. Montes-Mata*, 41 Kan. App. 2d 1078, 1081, 208 P.3d 770 (2009), *aff'd* 292 Kan. 367, 253 P.3d 354 (2011). In short, the district court correctly denied Warren's pretrial motion for discharge asserting a statutory speedy trial violation. As a matter of law, there simply wasn't one. In turn, the issue would have been worthless on appeal. Warren's appellate lawyer had no duty to raise a meritless point, and Warren could have suffered no prejudice as a result. See *Littlejohn v. State*, 29 Kan. App. 2d 506, 507-08, 28 P.3d 448 (2001); *Hobby v. State*, No. 105,138, 2012 WL 4794452, at *6 (Kan. App. 2012) (unpublished opinion).

5

Second, Warren contends the lawyer handling the direct appeal failed to fully argue what he says is a privilege that allowed him to call A.H. from the jail without violating the protective order. Under K.S.A. 2020 Supp. 21-5924(c), a lawyer representing a defendant or an agent acting for the lawyer may contact a person covered by a protective order "for a legitimate purpose" consistent with the legal representation. During the trial, Warren argued he was covered by K.S.A. 2020 Supp. 21-5924(c) on the notion that a criminal defendant is always functionally the equivalent of a cocounsel with his or her lawyer. So, as his own cocounsel, Warren says he had a privilege to call A.H. The premise, however, is quite wrong. See *White v. State*, 308 Kan. 491, 507-08, 421 P.3d 718 (2018). Absent a specific court order permitting a defendant to represent himself or herself (with or without standby counsel), the law draws a clear distinction between criminal defendants and their lawyers and their respective roles in developing and carrying out trial strategies. Likewise, almost all decision-making is entrusted to the lawyers exercising their professional judgment. Defendants have the exclusive right to decide to enter a plea, to testify or not during trial, and whether to appeal—nothing else, and most certainly not to contact or interview potential witnesses contrary to a protective order. See *State v. Hargrove*, 48 Kan. App. 2d 522, 534-35, 293 P.3d 787 (2013).

Warren's appellate lawyer reprised the I'm-my-own-cocounsel argument in the direct appeal, and our court categorically rejected it. *Warren*, 2020 WL 4035062, at *3-4. Warren now offers a variation that he contends his appellate lawyer failed to assert, rendering the representation constitutionally ineffective. Warren argues that because he had filed motions for self-representation in the domestic battery cases that had yet to be ruled on, he was privileged to call A.H. from the jail. Warren's realigned position ultimately is no more convincing than his initial try.

First, of course, there is no rule that a criminal defendant who has filed a motion for self-representation gets to act as his or her own lawyer before the district court decides the motion. Warren cites no authority supporting his proposition. Such an

6

interim-relief rule would create knotty problems, especially if a district court were to deny the motion for self-representation.

Second, even crediting Warren's idea—which we do not—the conduct charged in this case would not be privileged under K.S.A. 2020 Supp. 21-5924(c). The privilege expressly applies only to "an attorney" and "any person acting on such attorney's behalf." K.S.A. 2020 Supp. 21-5924(c). Self-represented defendants may be functioning as their own lawyers. But they do not become licensed attorneys in that capacity; and, in turn, they do not act on behalf of a licensed attorney. Assuming without deciding that a self-represented defendant might be entitled to some form of privilege under K.S.A. 2020 Supp. 21-5924(c), a district court could then carefully regulate any communication. For example, a district court could require any communication with a person shielded by a protective order to be conducted through a standby counsel. More generally, a person has no obligation to speak with a lawyer or investigator acting either for the State or for the defense, so a district court could appoint a special master to find out if the individual even wanted to talk at all. Similarly, a special master could monitor an agreed-upon interview to guard against improper questioning or harassment of the protected person.

Finally, the privilege in K.S.A. 2020 Supp. 21-5924(c) extends only to contacts for a legitimate purpose and, presumably, undertaken in a legitimate manner. Twenty calls in less than a month from a lawyer to a person who did not want to talk likely would be improper even if no protective order were in place. Warren's telephonic barrage of A.H. exceeded the scope of K.S.A. 2020 Supp. 21-5924(c), assuming it applied. In short, Warren's argument doesn't measure up. He can't show any legal prejudice on this point.

We find no fault in the district court's decision to summarily deny Warren's 60-1507 motion.

Affirmed.